**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 9:23-CR-80109-AHS-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL LEWIN,

    Defendant.
_____/

**SENTENCING MEMORANDUM WITH REQUEST FOR DOWNWARD VARIANCE FROM THE ADVISORY SENTENCING GUIDELINES**

COMES NOW, the Defendant, MICHAEL LEWIN, by and through undersigned counsel, pursuant to Rule 32 of the Federal Rules of Criminal Procedure and Title 18, United States Code, Section 3553 and files his Memorandum in Aid of Sentencing. Mr. Lewin submits this Sentencing Memorandum in support of his request for a variance and a sentence below the advisory guidelines. Mr. Lewin pled guilty and fully accepted responsibility for one count of Conspiracy to Commit Healthcare Fraud. His involvement in the conspiracy consisted of working for a marketing company created by individuals associated with a laboratory by arranging meetings for potential medicare beneficiaries to receive genetic testing. Although this was a large conspiracy in which many of the principals netted millions of dollars, Mr. Lewin's involvement lasted approximately 23 months during which time he personally received a total of $49,000 in payments for his efforts.

Upon the agents contacting Mr. Lewin he retained counsel and began his cooperation with the government by providing a full statement of his activities. The

Presentence Report indicated he has zero criminal history and his total offense level is a 19 which results in an initial guideline range of 30-37 months. The Government has filed a downward departure motion recommending a 30% reduction in his sentence which provides a guideline level of 21-27 months and the plea agreement anticipates the Government will recommend the bottom of the guidelines range. The law requires the Court to impose a reasonable sentence not greater than necessary to meet the sentencing concerns expressed by Congress in 18 U.S.C. §3553(a).

Based upon his good character, the nature and circumstances of his offense, his lack of any criminal history, his continued cooperation with the government, and his personal circumstances, Mr. Lewin requests this Court to impose a non-custodial sentence. In view of his background and history, the circumstances of the offense conduct, the requested variance fully satisfies all statutory sentencing factors set out in 18 U.S.C. ss 3553 (a).

**Background**

Before the court is Michael Lewin. He will have turned 58 years old the day before his sentencing. He is married and has been with his spouse, Rosario Lewin, for over 20 years. Thay have one daughter who is 10 years old. He and Rosario are real estate agents and work together. He graduated college with a degree in marketing. After graduation he worked in the insurance industry and then in the stock market with his older brother, Robert, in New York. He moved to Florida and became involved in a startup logistics business using his marketing skills, and then worked for another logistics company. He was successful in all his business ventures. He met his wife, Rosario, in Florida. He and Rosario have been licensed real estate agents since 2018 working in the same office. He and his family regularly attend church and he is involved in his community. He is a member of the board of the Barbara Knight Foundation for cancer research and regularly assists in

fundraising.

Michael has survived the death of his father, mother, and older brother all who passed away from cancer. As his supporters have detailed in their letters, he was the family member who was the source of comfort and support during their illnesses. Throughout all those difficult times Michael remained employed and a source of strength. Each of those family members had struggled with alcohol abuse during their life. Despite that Michael never succumbed to using alcohol to cope with his sorrow.

In 2013 Michael's twin brother Richard was murdered in California. Following that Michael began to drink alcohol to excess. Immediately after his brother's murder Michael was unable to maintain the stability he had demonstrated through the loss of his mother and father. His use of alcohol prevented him from maintaining constant employment. It was during this time that he began working with the individuals involved in this conspiracy.

In 2018 Michael regained his sobriety after recognizing the alcohol had blinded him from his responsibilities to his family. He and his wife began their real estate company which has continued to grow since then.

**Lewin's Supporters**

Multiple letters have been provided to the court detailing Mr. Lewin's character and commitment to his family. Included amongst those people who have written letters of support are James Krey, Lysa Buckner, Linda Zeller, Philip Caliendo, Michale Larocca, and William Knight. Michael has expressed his remorse and embarrassment to his family and others who have believed in him.

**NATURE AND CIRCUMSTANCES OF THE OFFENSE**

Michael has channeled his newfound sobriety and committed himself to

becoming a productive and law-abiding citizen who is applying the lessons he has learned to be the good, kind and caring person he is, repair the damage he has done to his family, and cooperate with law enforcement to the best of his ability.

Given the mitigating factors set forth herein, Mr. Lewin respectfully requests that this Court impose a reasonable sentence below the advisory guideline range. Such a sentence would be sufficient—but not greater than necessary—to satisfy the factors outlined in 18 U.S.C. § 3553(a). See *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). This matter is unique because of the significant dichotomy between the offense conduct, and the nature and extent of Lewin's good character. Except for the improper conduct at issue here, Mr. Lewin has led an exemplary and law-abiding life. Mr. Lewin's personal history, early acceptance of responsibility and cooperation with the Government, low risk of recidivism, the public and private embarrassment of a felony conviction, and the negative impact the same will have on Mr. Lewin for the remainder of his life, all provide ample justification for the Court to impose the below-guideline sentence requested.

The era of mechanized application of the sentencing guidelines to formulate an appropriate sentence is over. The United States Supreme Court's decision in *Pepper v. United States*, 562 U.S. 476 (2011) makes this abundantly clear. The sentencing guideline range is not presumptively reasonable, is advisory only, and is but one, and certainly not the most important factor, that the court must consider in

fashioning a reasonable sentence. *Rita v. United States*, 127 S. Ct. 2456 (2007); *Gall v. United States*, 128 S. Ct. 586 (2007). In *United States v. Hunt*, 459 F. 3d 1180 (11thCir. 2006), the court held that there are "many instances" where the guideline range will not yield a reasonable sentence. *Id*. at 1184. The court held that district courts are obligated to impose a reasonable sentence regardless of the guideline range, so long as the guideline has been considered. *Id*. In the United States Supreme Court's decision minimizing the impact of the guidelines on determining a reasonable sentence, the court stated:

> "It has been uniformed and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81 (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams*, 337 U.S. at 247, 69 S. Ct 1079.

*Pepper supra*. 1239-40 [Emphasis added]. The court went to say:

> In particular, we have emphasized that '[h]ighly relevant if not essential-to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." Id. at 247, 69 S. Ct. 10-79. Permitting sentencing courts to consider the widest possible punishment will suit not merely the offense but the individual defendant." *Wasman v. United States*, 468 U.S. 559 (1984).

While courts should give "respectful consideration" to the advisory guidelines and their accompanying policy statements, the Court in *Pepper* stressed, and post-*Booker* decisions make clear, that a district court may in appropriate cases

impose a non-guideline sentence based on a disagreement with the Sentencing Commission's views. *Pepper, supra*. at 1247. Except for unconstitutional considerations (e.g., race, sex, etc.) there is little limitation to the type and nature of information a court may consider in imposing a reasonable sentence. U.S.S.G. § 1B1.4; see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

**Mr. Lewin's Low Risk of Recidivism**

In 2004, the Federal Sentencing Commission published a report which presented a statistical analysis of the characteristics associated with the likelihood of a person recidivating. The study showed that (1) those sentenced under economic crime guidelines were less likely to recidivate than those sentenced under other guidelines; (2) older individuals were less likely to reoffend; (3) first-time offenders were less likely to recidivate than repeat offenders; (4) those who were employed were less likely to recidivate than those who were unemployed; (5) non-drug users were less likely to recidivate than drug users; (6) college graduates were significantly less likely to reoffend than those with lower levels of educational attainment; and (7) people who received non-incarcerative sentences were less likely to reoffend than those who received sentences involving incarceration. See "Measuring

Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines," United States Sentencing Commission (May 2004) at 28-32.[1] Each of these factors strongly supports a finding that Mr. Lewin poses no risk of reoffending.

The Eleventh Circuit discussed the interplay between a defendant's risk of recidivism and sentencing outcomes in *United States v. Clay*, 483 F.3d 739 (11th Cir. 2007). In *Clay*, the District Court sentenced the defendant to 60 months, even though his guidelines were 188-235 months, because of the District Court's view that the defendant was not likely to re-offend. Id. at 742–43. In affirming the defendant's sentence, the Eleventh Circuit stressed that a sentencing court is "require[d] . . . to consider characteristics of the defendant and the offense that make it more or less likely that the defendant will reoffend." Id. at 745. Because the defendant in that case had "fundamentally changed since his offense" and "pose[d] a lesser risk to the community," the Eleventh Circuit determined that the sentencing court was correct in granting a downward variance. Id. at 746. See also *Gall v. United States*, 552 U.S. 38, 57–59 (2007); *United States v. Cherry*, 487 F.3d 366, 369–70 (6th Cir. 2007) (granting significant downward variance from the guideline range where the defendant presented a low risk to reoffend); *Prosperi*, 686 F.3d at 48

---

[1] Available at: www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf

(affirming non-incarcerative sentence where there was no risk of recidivism). There should be no doubt that Lewin has fundamentally changed since his offense.

As further proof of the near nonexistent risk of Mr. Lewin reoffending, he has been under the 'supervision' of the Government since August 2022 (when his cooperation began and he signed his plea agreement), he has religiously observed the conditions of his release pending disposition of this matter and reported to his probation officer without fail. See *United States v. Munoz-Nava* 524 F.3d 1137 (10th Cir. 2008) (holding district court's sentence of one year and one day in prison plus one year of home detention reasonable in drug case where guidelines were 47–56 months, partly because the defendant's "behavior while on a year-and-a-half pretrial release, which the district court found to be exemplary," showed the defendant was unlikely to reoffend).

Aside from any sentence imposed by this court, Mr. Lewin will forever be branded a convicted felon and suffer the numerous collateral consequences that will follow. Mr. Lewin may not be able to utilize his marketing degree and skillset at a large firm with this felony conviction. Hopefully he will be able to remain in the real estate industry, where he has found success working alongside his wife. This permanent stain on one's record has not gone unremarked by our courts. In *United States v Smith*, 683 F.2d 1236 (9th Cir. 1982), the court noted that "the stigma of a felony conviction is permanent and pervasive." *Id.* at 1240. In *United States v. Wulff,*

758 F.2d 1121 (6th Cir. 1985), the court recognized that "a felony conviction irreparably damages one's reputation." *Id*. at 1125. "Once a person is labeled a felon, he or she is ushered into a parallel universe in which discrimination, stigma, and exclusion are perfectly legal." Michelle Alexander, The New Jim Crow (Paperback ed. The New Press 2012) at p. 94. *See also, United States v. Wulff*, 758 F.2d 1121, 1125 (6th Cir. 1985) ("A felony conviction irreparably damages one's reputation); *United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009) ("the need for further deterrence and protection of the public is lessened because the conviction itself already visits substantial punishment on the defendant").

### USSG SECTION 5H1.6 FACTORS

Beyond his cooperation, the primary reason for Mr. Lewin's request for a non-custodial sentence is the following example of his need to be available as the caretaker and emotional support for his wife and daughter. In 2022 three juveniles committed an armed home invasion robbery at his residence while Michael was not home. They entered the home with firearms and restrained his wife and child. The case is being prosecuted in West Palm Beach, case number 2022-CF-006616, and is presently pending with no immediate trial date. The undersigned has been assisting Michael and his family communicating with the prosecution in the criminal case so it has the least amount of negative impact on his daughter. So far we have been able to avoid the necessity of her being deposed by the defense in that case. His

daughter was 7 years old at the time of the incident. She began counseling through their church but due to her young age she was unable to effectively communicate with the therapist. Her therapist explained the family should watch for any concerning changes in her behavior. She continues to display anxiety triggered by the memory of the traumatic events. As explained in his wife's letter, Michael is her primary source of emotional support and safety. The case is progressing, and the prosecution is preparing for a potential trial of at least one of the defendants. Michael is understandably concerned that his wife and, more importantly his daughter, will have to navigate the pressures of depositions and the trial without his assistance. His wife is responsible for the administration of the business and Michael manages all the showings of the properties. As we in this business realize, it is often the family members that suffer most from the defendant's incarceration. In this case that reality is exponentially greater for Michael and his family. Michael is under the care of a psychiatrist and is receiving prescription medication for his anxiety resulting from the robbery and the pressure of this case potentially interfering with his family's continued safety and mental health.

The commentary to USSG section 5H1.6 sets forth a list of factors that the court may consider when determining whether a departure for family ties or responsibilities is warranted. One of the listed factors is the fact that a guideline

sentence would result in a specific loss of an essential caretaking support to the defendant's family.

In *United States v. Bueno*, 549 F.3d 1176 (8th Cir. 2008), the defendant was sentenced to 18 months of imprisonment and three years of supervised release for a narcotics conviction. The defendant's wife suffered from lupus and rheumatoid arthritis and the defendant was her primary caregiver. The court determined the defendant was the only person who could provide the continued required care for his wife and affirmed a downward departure granted by the District Court which imposed a period of probation in lieu of incarceration.

In the *United States v. Leon*, 341 F. 3d 928 (9Cir. 2003), the defendant pled guilty to several counts of preparing false income tax returns. The District Court granted a downward variance. The defendant's wife suffered from renal cancer and was recovering from surgery. In addition to her poor physical health evidence was presented that Mrs. Leon was suffering from depression and being a high suicide risk of she were to lose her husband due to death or incarceration given he was her only source of emotional support. In supporting the courts downward departure the court noted,

"….downward departures generally involved situations where the defendant is an irreplaceable caretaker of children…and the extent of the departure appropriately serves to protect those family members from the impacts of the defendants prolonged

incarceration".

## CONCLUSION

It is beyond doubt that Michael Lewin will never again engage in criminal conduct. This is the first, and only, blemish on what will be a life lived respecting the law. He is doing whatever he can to rehabilitate himself in the eyes of this Court, his family, and himself. Michael knows his actions were wrong. Michael is not a bad person, and his hope is this Court gets a sense of that through his efforts to cooperate with the Government and his other positive qualities. The shame and stress of this case and its consequences on his wife and child have had a profound effect on Mr. Lewin.